AUDREY K. COSTA and SUZANNE CAROL PALMER, individually and on behalf of the others similarly situated, Plaintiffs-Appellants, *v.* FRANKLIN Y. SUNN, individually and in his capacity as Director of the Department of Social Services and Housing, Defendant-Appellee

NO. 8549

(CIVIL NO. 68124)

MARCH 16, 1982

LUM, ACTING C.J., NAKAMURA, J., RETIRED JUSTICE MARUMOTO IN PLACE OF RICHARDSON, C.J., RECUSED, AND RETIRED JUSTICES OGATA AND MENOR ASSIGNED BY REASON OF VACANCIES

## OPINION OF THE COURT BY NAKAMURA, J.

The issue is whether two notices of public hearings on proposed amendments of the rules of the Public Welfare Division of the Department of Social Services and Housing (DSSH or the department) conformed to applicable provisions of the Hawaii Administrative Procedure Act, HRS Chapter 91 (HAPA). Plaintiffs-appellants, recipients of public assistance under programs administered by the DSSH, contend the published notices failed to state the "substance" of the proposed amendments, as required by HRS § 91-3.[1] Defendant-appellee, the Director of the department, maintains the notices he caused to be published were legally sufficient and the circuit court was correct in awarding him summary judgment on the action for declaratory relief brought by Plaintiffs-appellants. We conclude the notices did not reflect the "substance" of the rule changes contemplated by the DSSH, and reverse the circuit court's award of judgment to Defendant-appellee.

### I.

The first notice appeared in the Honolulu Advertiser and the Honolulu Star-Bulletin on June 25, 1981. It covered a planned format change in the rules of the department's Public Welfare Division to fulfill a HAPA requirement of a uniform format for the publication, filing, and indexing of rules by all state agencies. The notice also mentioned "some substantive changes to the rules of the Public Welfare Division." The "substantive changes" contemplated by the department actually were a host of significant rule changes

---

[1] HRS § 91-3, in pertinent part, reads:
   Procedure for adoption, amendment or repeal of rules. (a) Prior to the adoption of any rule authorized by law, or the amendment or repeal thereof, the adopting agency shall:
      (1) Give at least twenty days' notice for a public hearing. Such notice shall include a statement of the substance of the proposed rule, and of the date, time and place where interested persons may be heard thereon. The notice shall be mailed to all persons who have made a timely written request of the agency for advance notice of its rulemaking proceedings, and published at least once in a newspaper of general circulation in the State for state agencies and in the county for county agencies.

affecting recipients of public assistance and touching all phases of the welfare programs within the department's jurisdiction from conditions of eligibility for assistance payments to their possible recoupment.[2] Hearings as advertised were conducted throughout the state on July 24, 1981.

The second notice appeared in the same newspapers on October 25, 1981, and advertised public hearings scheduled for November 18, 19, and 20, 1981. It stated, *inter alia,* that portions of the department's proposed new rules "that were heard on July 24, 1981 but have not yet been adopted" would be reheard. It further declared that a substantial number of chapters of the department's rules had been "rewritten to reflect recent changes to the Social Security Act and Food Stamp Act as a result of the Omnibus Budget Reconciliation Act of 1981 (Public Law No. 97-35)."[3]

---

[2] The notice described the planned format and substantive changes as follows:

Pursuant to 91-3, Hawaii Revised Statutes, notice is hereby given that the Department of Social Services and Housing will hold public hearings to consider the conversion of its existing rules to the Public Welfare Division to comply with the Administrative Rules Format mandated by Section 91-4.2, HRS.

In order to accomplish the conversion, the Department of Social Services and Housing will repeal all prior rules except for Chapter 891, Licensing of Family Day Care Homes and Chapter 892, Licensing of Group Day Care Centers and Family Group Homes, of Title 17, Administrative Rules, and adopt new rules as well as make some substantive changes to the rules of the Public Welfare Division.

It then listed the chapter numbers and headings of the rules to be adopted and stated what the chapters covered in the following broad terms:

The chapters to be adopted specify conditions of eligibility, services to be provided, methods and amount of payments/services to be rendered, conditions under which payments/services will be terminated and conditions under which Public Welfare Division will recoup for services or payments made. Chapters are also being adopted to specify the purpose of the Public Welfare Division's rules, general terms, definitions, and provisions governing maintenance and disclosure of Public Welfare Division information, rights and responsibilities of the public and Public Welfare Division in seeking and providing for fair hearings, fraud provisions, method of payment to a deceased recipient's estate, requirements of the public and Public Welfare Division when the Public Welfare Division program manuals are requested.

[3] The intent to conduct a rehearing and to further amend the rules was stated as follows:

Pursuant to Section 91-3, Hawaii Revised Statutes, notice is hereby given that the Department of Social Services and Housing will hold public hearings to re-hear certain proposed new chapters of Title 17, Administrative Rules, that were heard on July 24, 1981 but have not yet been adopted. All rules existing prior

Plaintiffs-appellants filed their complaint for declaratory judgment on November 5, 1981 and simultaneously sought to enjoin the conduct of the scheduled hearings. The requested preliminary injunctive relief was granted by a circuit judge, but we vacated the injunction on the Director's petition because of the possible irreparable harm it posed for the department. Summary judgment in favor of Defendant-appellee was subsequently granted by another circuit judge, and Plaintiffs-appellants' timely appeal to this court followed.

## II.

A "stated objective of the rule-making provisions of the HAPA is '[t]o provide for public participation in the rule-making process, by allowing any interested person to petition for a change in the rules as well as to participate in a public hearing.' " *Aguiar v. Hawaii Housing Authority,* 55 Haw. 478, 487, 522 P.2d 1255, 1261-62 (1974). And "the legislature has . . . made the judgment . . . that an agency must consider the views of interested persons where it seeks to promulgate a 'rule,' no matter how complex is the data that goes into the

---

to the adoption of Title 17, Administrative Rules, except for Chapter 891, Licensing of Family Day Care Homes, and Chapter 892, Licensing of Group Day Care Centers and Family Group Homes, shall be repealed. The following chapters have been re-written to reflect recent changes to the Social Security Act and Food Stamp Act as a result of the Omnibus Budget Reconciliation Act of 1981 (Public Law No. 97-35). . . .

(The notice then listed 39 chapters by numbers and headings). It described the foregoing chapters in these broad terms:

These chapters specifically deal with conditions of eligibility, services to be provided, methods and amount of payments/services to be rendered, conditions under which payments/services will be terminated, conditions under which the Public Welfare Division will recoup for services or payments made, rights and responsibilities of the public and Public Welfare Division in seeking and providing for fair hearings and fraud provisions.

The department's intention not to adopt certain chapters on which hearings had been conducted earlier was also announced as follows:

Chapter 921, Information and Referral Services, Chapter 922, Employment and Training Services, Chapter 924, Family Planning Services, Chapter 925, Health Support Services, and Chapter 870, Family Planning Services for Refugees, which were heard on July 24, 1981 will not be adopted since the Department can no longer provide these services due to federal budgetary cutbacks.

rule's formulation." *Id.* at 487-88, 522 P.2d at 1262. HRS § 91-3 demands advance notice of an administrative agency's plan to adopt, amend, or repeal its rules; it further provides that the notice shall contain "a statement of the substance of the proposed rule."[4] Thus, the notice should fairly apprise interested parties of what is being proposed so they can formulate and present rational responses to the proposal. Viewed in this light, the notices in question were inadequate.

The first advertisement publicized department proposals to re-cast the rules of the Public Welfare Division in a new format and to make "some substantive changes." *See* note 2 *supra.* The second promulgated the department's intention to rewrite thirty-nine chapters of the rules "to reflect recent changes to the Social Security Act and Food Stamp Act as a result of the Omnibus Budget Reconciliation Act of 1981." *See* note 3 *supra.* The form conversion poses no problem, and Plaintiffs-appellants raise no question about the portion of the initial notice related thereto. But the "substantive changes" mentioned in the first advertisement and the declared intention of the department to rewrite the rules "to reflect recent changes" to the Social Security and Food Stamp Acts in the second are causes for concern.

Wholesale rule changes adversely affecting recipients of assistance were planned and adopted because of the passage of the foregoing federal legislation and other considerations. This is corroborated by the summary of the changes, which was subsequently distributed to the department's staff.[5] Yet the necessary notices, in our opinion, gave no inkling of what was actually in store even when read throughout.

---

[4] We are not speaking here of emergency rules which may be adopted without prior notice or hearing pursuant to HRS § 91-3(b).

[5] The internal document summarized nearly fifty changes in the rules. Under the heading of Financial Assistance, there are twenty-five changes listed. The first four amendments summarized under this rubric are reproduced below as examples of the kinds of changes wrought by the new rules:

§ *17-619-6* An individual striker or the striker's family shall not be eligible for financial assistance if the individual is participating in a strike on the last day of the month.

§*17-620-5* and § *17-621-25* The assets and income of a sponsor of an alien shall be deemed to be the assets and income of an alien requesting financial assistance

HRS § 91-3, as we have seen, obligates an agency contemplating rule changes to inform the public of the "substance" of the impending changes and to "[a]fford all interested persons opportunity to submit data, views or arguments, orally or in writing."[6] Defendant-appellee claims the department met this obligation by setting forth the essentials of what it proposed to do. We disagree, for the "substance" of a proposed rule "means not merely the subject of it, but an intelligible abstract or synopsis of its material and substantial elements." *State v. Brooks,* 241 Ala. 55, 56, 1 So.2d 370, 370 (1941); *accord, Parrish v. Faulk,* 293 Ala. 401, 404, 304 So.2d 194, 197 (1974). The notices in question stated little more than the headings of the new rules and did not provide interested persons with sufficient information to "direct their comments toward concrete proposals." *National Tour Brokers Association v. United States,* 591 F.2d

---

for the first time after September 30, 1981, for three years following the alien's entry into the United States.

§ *17-620-6* Only those assets which are basic maintenance items essential to day-to day [sic] living including but not limited to clothing, furniture, stove, refrigerator, or washing machine shall be exempted from consideration in the individual or family personal reserve.

§ *17-620-7* This rule specifies that assets shall be considered as part of personal reserve both when actually available and when the applicant or recipient has a legal interest in a liquidated sum and has the legal ability to make such sum available for support and maintenance. Some assets identified in this rule are:

Equity value of life insurance policies (not cash value);
Equity value in burial plots, funeral plans, or burial vaults;
Any equity in personal property, such as jewelry;
Any equity in real property not used as the family home;
Money or assets in trust funds;
Money received by the individual or family from the sale of assets.

[6] HRS § 91-3(a)(2) reads:

Procedure for adoption, amendment or repeal of rules. (a) Prior to the adoption of any rule authorized by law, or the amendment or repeal thereof, the adopting agency shall:

. . . .

(2) Afford all interested persons opportunity to submit data, views, or arguments, orally or in writing. The agency shall fully consider all written and oral submissions respecting the proposed rule. The agency may make its decision at the public hearing or announce then the date as to when it intends to make its decision. Upon adoption, amendment, or repeal of a rule, the agency shall, if requested to do so by an interested person, issue a concise statement of the principal reasons for and against its determination.

896, 901 (D.C. Cir. 1978). And the purpose of HRS § 91-3 "to make criticism or formulation of alternatives possible" was disserved thereby. *Home Box Office, Inc. v. Federal Communications Commission,* 567 F.2d 9, 36 (D.C. Cir.), *cert. denied,* 434 U.S. 829 (1977).

The summary judgment in favor of Defendant-appellee is reversed, and the case is remanded to the circuit court for entry of a judgment consistent with this opinion.

*Todd Boley (Brenton Rogozen* with him on opening brief; Legal Aid Society of Hawaii), for plaintiffs-appellants.

*Robert K. Richardson* and *Loretta A. Ebinger,* Deputies Attorney General, for defendant-appellee.